**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0528-24

SKT MANAGEMENT LIMITED
LIABILITY COMPANY,

      Plaintiff-Appellant,

v.

TOWNSHIP OF IRVINGTON and
THE MUNICIPAL COUNCIL OF THE
TOWNSHIP OF IRVINGTON,

      Defendants-Respondents.

_____

SKT MANAGEMENT LIMITED
LIABILITY COMPANY,

      Plaintiff-Appellant,

v.

693 LYONS AVENUE-IRVINGTON
HOLDING, LLC, THE PLANNING
BOARD OF THE TOWNSHIP OF
IRVINGTON, and JOSEPH and
PATRICIA TSE,

      Defendants.

_____

Argued January 12, 2026 – Decided February 11, 2026

Before Judges Sabatino, Walcott-Henderson, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. L-8690-17 and L-8306-18.

James M. Turteltaub argued the cause for appellant (The Turteltaub Law Firm, LLC, attorneys; James M. Turteltaub, of counsel and on the briefs; Linda A. Turteltaub, on the briefs).

Eric M. Bernstein argued the cause for respondents (Eric M. Bernstein & Associates, LLC, attorneys; Eric M. Bernstein, of counsel and on the brief; Brian M. Hak, on the brief).

PER CURIAM

Plaintiff SKT Management Limited Liability Company ("SKT") appeals from a summary judgment order dismissing its challenge to MC3620 ("the Ordinance"), an ordinance adopted by the Township of Irvington in September 2017 utilizing its police powers. The Ordinance regulates which convenience stores may remain open for twenty-four hours, as an exception to the Township's general prohibition on such stores being open from 11:00 p.m. to 6:00 a.m.

For the reasons that follow, we affirm.

A-0528-24

The facts and procedural history pertinent to the appeal may be summarized as follows.

SKT owns and operates a gas station and a small, 1,477 square foot convenience store in the Township. SKT does not operate the convenience store between the hours of 11:00 p.m. and 6:00 a.m. However, it continues to pump gasoline during at least a portion of that time frame, as gas stations in the Township are permitted to be open for twenty-four hours.[1]

SKT claims the 2,400 square footage ("sf.") requirement is arbitrary and was only implemented to lure a specific 7-Eleven convenience store to begin doing business in the Township on a neighboring lot to SKT's convenience store. The 7-Eleven, if built, would have been 2,552 square feet, slightly above the 2,400 sf. requirement in the Ordinance and therefore, eligible to remain open twenty-four hours.

In December 2017, SKT filed an action in lieu of prerogative writs in the Law Division against the Township challenging the constitutionality and

---

[1] As described by SKT's counsel, SKT does sell certain goods from the convenience store to motorists who purchase gas after 11:00 p.m., doing so through a "window" ordering process. We do not address here whether that process complies with the local ordinances, except to note that apparently SKT has not been charged with a violation arising out of such sales.

propriety of the Ordinance. About one year later, over the opposition of SKT and other objecting residents after several days of hearings, the municipal Planning Board approved variances for the site. SKT then filed a second action in lieu of prerogative writs, this time against the Planning Board, seeking to nullify the Board's approval. The two actions were consolidated on the ground that the Ordinance was a key component of both cases because the 7-Eleven's site plan was predicated on it being able to operate for twenty-four hours.

After the parties filed motions and cross-motions for summary judgment, the trial court considered oral argument on the Ordinance challenge. In a written opinion issued on May 26, 2020, the trial court found that SKT failed to meet its burden of proving that the Township adopted the Ordinance for invalid purposes and granted the Township summary judgment.

Thereafter, as the litigation with the Planning Board continued, the property owner discontinued its plan to locate a 7-Eleven store on the site. Consequently, in September 2024, the parties in the Planning Board action entered into a Consent Order dismissing the action against the Planning Board but allowing SKT to continue to contest the Ordinance, which SKT is pursuing in the present appeal.

A-0528-24

On appeal, SKT argues: (1) the Township adopted the Ordinance for the invalid purpose of benefitting the proposed 7-Eleven, and the Township admitted to that purpose in a brief it filed in support of its motion to consolidate the two lawsuits; (2) the Township lacked a rational basis for imposing the 2,400 sf. requirement, making the Ordinance unconstitutional under the Fourteenth Amendment of the United States Constitution; (3) the Ordinance arbitrarily discriminates against smaller convenience stores, making it invalid under Article I, Paragraph 1 of the New Jersey Constitution; and (4) the court should not have utilized the standard from Hutton Park Gardens v. W. Orange Town Council, 68 N.J. 543 (1975), which assigns the burden of production to the challenger of an ordinance, because the Ordinance here is unconstitutional on its face and no factual inquiry was necessary to overturn it.

II.

We begin with a brief discussion of the applicable standards of ordinance validity and judicial review.

As prescribed by N.J.S.A. 40:48-2, a municipality may utilize its police powers to enact ordinances "for the preservation of the public health, safety, and welfare of the municipality and its inhabitants." Ordinances "must tend the benefit the public health, morals, safety or general welfare to pass constitutional

A-0528-24

muster under the police power." Quick Chek Food Stores v. Springfield Twp., 83 N.J. 438, 449 (1980). Therefore "a police [powers] regulation may not impose an unnecessary, unreasonable and arbitrary restriction having no relation to the public interest." Ibid.

Generally, "[a] strong presumption of validity accompanies municipal ordinances enacted pursuant to the police power." Berk Cohen Assocs. at Rustic Vill. v. Borough of Clayton, 199 N.J. 432, 446 (2009). "Courts should not question the wisdom of an ordinance, and if the ordinance is debatable, it should be upheld." Riggs v. Long Beach Twp., 109 N.J. 601, 611 (1988). Although ordinances with an invalid purpose may not be upheld, "[i]f an ordinance has both a valid and invalid purpose, courts should not guess which purpose the governing body had in mind", at least in a due process challenge, and uphold the ordinance. Id. at 613. The burden to demonstrate an ordinance is "arbitrary and unreasonable rests with the party seeking to overturn [it]." Quick Chek, 83 N.J. at 447 (citing Hutton Park, 68 N.J. at 564 ).

"[I]f any set of facts may be reasonably conceived to justify the ordinance, it will not be set aside." Ibid. (citing Hutton Park, 68 N.J. at 564-65). However, when an ordinance regulates a constitutionally protected right, the burden of proof shifts to the municipality to demonstrate the ordinance's validity. Zilinsky

v. Zoning Bd. of Adj. of Verona, 105 N.J. 363, 371 (1987).

SKT argues the trial court's reliance on the Hutton Park standard of presumptive validity was misplaced.  We disagree, at least with respect to the discrete questions of whether (1) the Ordinance violates principles of substantive due process, or (2) is invalid because it is an arbitrary and capricious exercise of police power.  Case law involving those types of challenges have applied a Hutton Park approach, either by citing Hutton Park (which was a due process challenge) explicitly, or by placing the burden on the challenger to show the ordinance should be set aside.  See, e.g., Brown v. Newark, 113 N.J. 565, 571 (1989); Quick Chek, 83 N.J. at 447.

That said, it is not clear that a plaintiff's claims of an improper classification under state equal protection principles are likewise governed by a Hutton Park approach.  As this court recently noted in UAW v. Murphy, __ N.J. Super. __, __ (App. Div. 2026) the New Jersey Supreme Court has construed our State Constitution to impose a "balancing test" for equal protection analysis, distinctive from the "tiered scrutiny" approach that the United States Supreme Court uses to evaluate challenges under the federal Equal Proection Clause.  Id. at __(slip op. at 35-36).  As our Supreme Court has instructed, equal protection claims under our State Constitution require courts to weigh three factors:  (1)

7

"the nature of the affected right"; (2) "the extent to which the governmental restriction intrudes upon it"; and (3) "the public need for the restriction." Ibid. (citing Right to Choose v. Byrne, 91 N.J. 287, 308-09 (1982)).

Despite this difference in analytic approach, we are satisfied that the trial court in this case reached the correct result in rejecting SKT's various challenges to the Ordinance. In this regard, we affirm and adopt the sound reasoning set forth in Judge Thomas R. Vena's May 26, 2020 memorandum opinion. We add a few comments by way of amplification.

The trial court justifiably found that SKT had not met its burden to demonstrate the Ordinance's minimum sf. requirement for overnight convenience stores lacks a rational basis or is arbitrary or capricious. Case law affords municipal bodies considerable latitude in applying their police powers and prescribing the hours of permitted retail operations within their borders.

As the Supreme Court has held, "[t]he subject matter of the police power includes the authority to restrict business hours of retail establishments." Quick Chek, 83 N.J. at 448. In Quick Chek, an ordinance that imposed mandatory closing hours upon retail establishments in residential areas to preserve the relative nighttime tranquility in these areas was deemed a valid public purpose, and the ordinance was accordingly upheld. Id. at 449-50. As the Court noted,

"[w]e have no hesitancy in finding that the trial court was justified in holding that limitations upon hours of service in commercial establishments located in a residential milieu is a regulation related to the health, peace and comfort of those surrounding homes." Id. at 449. "Doubtless such a regulation furthers the public health and welfare of the residential community." Ibid.

To be sure, in some cases a municipality has been deemed to have been too restrictive in regulating hours of business and in hindering the rights of businesses "to pursue lawful vocations." Southland Corp. v. Edison Twp., 217 N.J. Super. 158, 173 (Law Div. 1986), aff'd o.b., 220 N.J. Super. 294 (App. Div. 1987). For instance, in Southland, the Law Division overturned an ordinance that imposed mandatory closing hours upon all convenience stores and gasoline stations for the stated purpose of preventing violent robberies. Id. at 161-62. Although the occurrences of robberies at gas stations "warranted regulation," the court in Southland found the "sweeping prohibition" of late-night operations for those two specific categories of businesses was too broad and unreasonable; extensive expert testimony and other evidence revealed more effective ways to prevent crime that would enable those businesses to remain open, such as implementing cameras and a minimum number of employees on duty. Id. at 177-80.

A-0528-24

Here, the Township has enacted a more limited set of provisions. Unlike in Southland, it is undisputed the Township allows gas stations, such as the one operated by SKT, to remain open all night under certain specified conditions not contested here. There is no "sweeping prohibition." Cf. Southland, 217 N.J. Super. at 180.

With respect to all-night convenience stores, the Township has imposed the aforesaid 2,400 sf. requirement, plus other requirements such as minimum staffing and implementation of security cameras not challenged here. The trial court discerned a rational basis underlying the square footage minimum, namely that the Ordinance was created to encourage larger-sized convenience stores to operate in the Township at night, stores which could stock a wider range of items that residents might need during those hours. As the court also noted, "there is evidence that the Ordinance was enacted after thorough research, and with public safety in mind." We are likewise persuaded the imposition of a minimum store size has a rational basis.

A different and closer question is presented by SKT's equal protection claim. As we noted above, the state constitutional balancing test entails an assessment of (1) "the nature of the affected right"; (2) "the extent to which the governmental restriction intrudes upon it"; and (3) "the public need for the

A-0528-24

restriction." <u>UAW</u> slip op. at 35. The Township has presented sufficient grounds to weigh that balance in favor of the ordinance.

We acknowledge that under the first state equal protection factor, smaller-sized convenience stores such as SKT's have a commercial interest in doing business all night. Under the second factor, however, we also recognize the intrusion to that interest here is limited and not absolute, as nothing in the Ordinance precludes smaller store owners from considering expanding their premises to qualify for the Ordinance's exemption to hourly restrictions.

Most importantly, under the third factor, the Township has the prerogative to offset private commercial interests against the public need, including public safety, tranquility, and other potential impacts stemming from unlimited all-night operations. The municipality drew a line that allows a degree of overnight convenience store operations to meet the needs of residents for retail goods, while, at the same time, imposing reasonable limitations on such commercial activity that can disturb the peace and safety.

SKT argues that drawing the line at 2,400 square feet is an unfair classification, and that it discriminates against smaller-sized establishments such as its own. The trial court reasonably rejected this argument. If, as SKT advocates, the 2,400 sf. requirement were nullified, then a much higher 48,000

11

sf. minimum set forth elsewhere in the ordinances presumably would then apply. That, in turn, would more likely result in a "sweeping prohibition" on convenience stores being open all night in the Township.

Although we recognize the 2,400 sf. figure chosen by the Township is slightly below the size of the formerly planned 7-Eleven, the owners of the property adjacent to SKT's store have discontinued the proposal and thus, that choice no longer gives SKT's adjacent property owner a competitive advantage.

In sum, the classification withstands a state equal protection challenge, based on the record presented and in the absence of expert opinion that substantiates the alleged unfair competitive advantage the Ordinance would allegedly give to larger-chain convenience stores. For similar reasons, any Federal Equal Protection claims would likewise fail.

To the extent that SKT raises other arguments we have not addressed, they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0528-24