**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0473-23

DAVID MROWKO,

    Plaintiff-Appellant,

v.

BELLEVILLE TOWNSHIP
ZONING BOARD OF
ADJUSTMENT, FRANK
DELORENZO, JR., in his
official capacity as Construction
Official for Belleville Township,
KEVIN CRISTANCHO, and
VICTOR M. CRISTANCHO,

    Defendants-Respondents.

_____

Submitted October 23, 2024 – Decided November 7, 2024

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3771-23.

Weiner Law Group LLP, attorneys for appellant (Steven R. Tombalakian, of counsel and on the briefs).

Gaccione Pomaco, PC, attorneys for respondents Kevin Cristancho and Victor M. Cristancho (Diana Powell McGovern, of counsel and on the brief).

PER CURIAM

Plaintiff David Mrowko appeals from a July 20, 2023 order denying relief requested in his order to show cause (OTSC) and a September 13, 2023 order entered in favor of defendants Kevin Cristancho and Victor M. Cristancho[1] and dismissing his complaint in lieu of prerogative writs with prejudice. We affirm.

We recite the facts from the record. Plaintiff owns property located at 31 Bridge Street, Belleville, New Jersey, also known as Block 6706, Lot 22.02 (rear lot). The Cristanchos own property located 35 Bridge Street, also known as Block 6706, Lot 22.01 (front lot). The front lot and the rear lot share a common driveway.

On May 14, 2009, the Belleville Township Zoning Board of Adjustment (Board) approved an application to create two separate lots, 22.01 known as the front lot, and 22.02, known as the rear lot. The front and rear lots were originally part of one lot. A new single-family dwelling would be built on the rear lot and an existing two-family home would remain on the front lot.

---

[1] Kevin Cristancho is the son of Victor M. Cristancho. Because these defendants share the same last name, we refer to them individually by their first name and collectively by their last name. No disrespect is intended.

In granting approval for the two lots, the Board required the rear lot to "create an easement for the benefit of the front lot to gain access to the parking area of the two-family home and that the easement area remain unobstructed by vehicles or otherwise at all times." Additionally, the Board required "the owner of the rear larger lot maintain the easement in good repair so that continuous access for ingress and egress be provided."

Consistent with the Board's resolution approving the subdivision, an "ingress/egress easement" was prepared, allowing a mutual easement "upon a portion of [the rear lot] for the benefit of [the front lot] to gain access to the parking area of [the front lot]." The owners of the front and rear lots were required to "keep the easement area unobstructed at all times so that continuous access for ingress and egress . . . be provided." Nothing in the easement's language required consent from the front or rear lot owners for future applications related to either lot.

A-0473-23

In July 2016, plaintiff and his uncle, Andrzej Kokoszka, became co-owners of the rear lot.[2]  In 2017 or 2018, Kevin and Victor purchased the front lot.

On December 18, 2020, the Cristanchos applied to the Board to convert the existing two-family home on the front lot into a four-family home.[3]  In March 2021, the Cristanchos' attorney served notice to property owners within two hundred feet of the front lot regarding the four-family dwelling application.  The Cristanchos counsel sent the notice to plaintiff and his uncle by certified mail.[4]  In March 2021, plaintiff lived at "513 Davis Avenue, Kearny, NJ 07032."  However, counsel inadvertently addressed the notice to "513 David Avenue, Kearny, NJ 07032."  The Cristanchos' counsel also published notice of the application in the Belleville Times.

Consistent with the certified mail notice, the Board held a public hearing on the Cristanchos' application on May 6, 2021.  At the start of hearing, the

---

[2]  In October 2021, plaintiff became sole owner of the rear lot.  The dates relevant to plaintiff's claims occurred prior to his sole ownership of the rear lot. In February 2023, plaintiff's uncle passed away.

[3]  The zoning ordinance allowed up to a three-family home as of right.

[4]  The United States Post Office has a two-year limit for retrieving certified mail delivery information.  Thus, confirmation regarding the certified mail notice sent to plaintiff and his uncle was no longer available after March 2023.

4                                                      A-0473-23

Board's counsel confirmed the Board's secretary received "notice of publication." In summarizing the application, the Cristanchos' attorney explained there would be no changes to the footprint or square footage of the existing home on the front lot. Kevin, who testified at the Board hearing, confirmed "all seven [parking] spaces [would] be designated to all of the units in the proposed four-family dwelling."

A Board member expressed concern about the parking for the proposed four-family home. To address any concerns, the Board's chairperson proposed the formation of a subcommittee to view the front lot and "report back." The Board adjourned the Cristanchos' application for the subcommittee to visit the property.

At the reconvened hearing after the site visit, the Board heard additional testimony from Victor, John Guadagnoli, a licensed architect, and John Szabo, a licensed land use planner. Board members again raised the parking space issue. Counsel for the Cristanchos explained the site would have four tandem spaces and three individual spaces as allowed under the Township's zoning ordinance. On the topic of parking spaces, Guadagnoli testified there was a paved mutual driveway easement "along [the] left side that accesses the rear

5

property" and the occupants of the four-family home would use the paved area limited to seven parking spaces.

Although the Board members personally disfavored the Cristanchos' application, they concluded the application satisfied all requirements under the Township's zoning code. As a result, on September 2, 2021, the Board approved a four-family dwelling on the front lot.

The Board adopted an October 7, 2021 resolution memorializing its approval of a four-family dwelling on the front lot. The resolution stated the Cristanchos "provided adequate notice of the [a]pplication and the hearing in accordance with [the] statute." Regarding parking for the four-family dwelling, the resolution noted there would be seven parking spaces and the spaces would be "specifically designated for each unit." Additionally, the resolution found "no expansion of the building footprint and no site improvements" would result from the approval of the four-family dwelling. The Board's memorializing resolution was published in the Belleville Times on October 28, 2021.

Plaintiff claims he first learned of the Cristanchos' application on May 26, 2023, when he saw contractors working at the home. Plaintiff then filed an Open Public Records Act (OPRA) request for information related to any development approvals associated with the front lot. Based on information from his OPRA

6

request, plaintiff learned the Board granted approval for a four-family dwelling on the front lot.

In June 2023, plaintiff filed a verified complaint in lieu of prerogative writs and an OTSC. In his complaint, plaintiff requested reversal of the Board's approval of a four-family home on the front lot. He also asked the court to deem the Board's resolution memorializing the approval null and void based on allegedly defective notice. The judge signed plaintiff's OTSC and set July 20, 2023 as the return date.

Prior to the OTSC hearing, the Cristanchos moved to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. The Board filed a cross-motion on the same grounds.

At the OTSC hearing, plaintiff acknowledged the easement allowed mutual use of a paved driveway. However, plaintiff argued the Cristanchos intensified the use of the easement without his consent. Additionally, plaintiff asserted the Board lacked jurisdiction to consider the Cristanchos' application as a result of "botched [notice] to the neighboring property owner who's impacted by the application."

During the OTSC argument, the judge stated plaintiff's complaint failed to allege that neither plaintiff nor his uncle received notice of the Cristanchos'

application. The judge noted such an omission might be "a fatal error in [plaintiff's] order to show cause." The judge also acknowledged the Cristanchos did not increase the square footage or the footprint of the existing home on the front lot. She further noted the number of parking spaces associated with the approval of a four-family dwelling on the front lot remained unchanged because there were "only seven cars before and seven cars after [that] can use those parking spaces."

In opposing the OTSC, the Cristanchos' counsel argued plaintiff's action was time barred because he did not file his complaint within forty-five days of publication of the Board's memorializing resolution. The Board's attorney also argued the existing easement remained unchanged after the Board approved the four-family dwelling and the Cristanchos were "using that easement the same now as [they] did then and the property in the back is using the easement for the same purpose."

In denying the OTSC, the judge first addressed the issue of notice, stating:

> In this particular case it appears to be truly a typographical error. There is no question it wasn't purposeful.
>
> . . . .
>
> So, is that a fatal defect? So with regard to the notice, itself, for purposes of this motion without further

discovery in the case, the court finds that that is not a fatal defect without further discovery on the issue. And the reason I say that is twofold.

Number one, . . . I don't have anything from the plaintiff, himself, saying ["]I did not receive that notice. If I had received that notice it would have been important to me.["] Nothing like that. . . .

Number two, there was a co-owner at the time. And he was the first person to whom it was addressed. He has not submitted anything saying ["]I did not receive it. I did not know about this.["]

The judge then addressed the claimed intensification of use of the easement. She explained:

I find it hard to believe that the plaintiff didn't know. . . it was being used as a four-family house. He must be. It's right in front of his house – how many people are parking.

But most importantly to me at least at this juncture is the fact that there could not be intensification of use. . . . [A]gain, there might be proof that that is not true. Seven parking spaces. . . . Probably the same number of people because the house is not being expanded.

. . . .

So, . . . the question of intensification of use is . . . a fact issue . . . under these circumstances. Probably not favorably towards [plaintiff]. But that's not for me to determine today.

Two months after the judge's denial of the OTSC, the parties appeared for renewed argument on the motions to dismiss. Counsel for the Board and the Cristanchos argued plaintiff failed to file his complaint in lieu of prerogative writs within forty-five days of publication of the Board's resolution under Rule 4:69-6. Consequently, they asserted plaintiff's claims were time barred.

Plaintiff argued the motions to dismiss should be denied under Rule 4:6-2(e) "because the two claims that were raised in the plaintiff's complaint are cognizable. One is that the notice was defective and, two, that the easement was intensified without consent." Plaintiff also advised that because his uncle died in February 2023, he was unable to proffer a certification concerning the lack of notice.

In ruling for the Board and the Cristanchos, the judge found plaintiff's consent was not required for the Board to approve a four-family dwelling on the front lot because the size of the home remained the same. The judge stated "under the facts of this case . . . [t]here is . . . absolutely no increase whatsoever of the use of that easement."

The judge also concluded plaintiff failed to meet his burden of proof concerning the lack of notice. The judge cited the unrefuted certification from the Cristanchos' counsel stating that he handled the certified mailing of the

notices, and plaintiff's notice "did not come back." The judge also noted plaintiff failed to cite any case law that the minor typographical error in the notice was "fatal" to the Board's approval of the four-family dwelling.

In dismissing plaintiff's complaint, the judge further stated:

> It is my ruling[] that [N.J.S.A.] 40:55D-12 has been met in this particular case. I find . . . the [forty-five] days that are required for the bringing of the prerogative writ[s] has not been met and even if we were to go further, quite frankly, under the . . . uncontested facts of this case . . . there is no question that there is no intensification of the easement. . . . [T]he notice that was provided was clearly sufficient to notify of what the issue would be with regard to this and . . . I don't find there to be anything . . . that was out of order with regard to this matter.

On appeal, plaintiff contends the judge erred in declining to permit full discovery prior to dismissing his complaint. Further, plaintiff argues the judge's findings, were contrary to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Additionally, plaintiff contends his consent was required because the Cristanchos' four-family home intensified the use of the easement. We reject these arguments.

In reviewing a judge's decision on an action by a governing body, such as a zoning board of adjustment, we are bound by the same standard of review as the trial court. CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd., 414 N.J.

11

Super. 563, 577 (App. Div. 2010). Our review of decisions by a zoning board is limited. Friends of Peapack-Gladstone v. Borough of Peapack-Gladstone Land Use Bd., 407 N.J. Super. 404, 424 (App. Div. 2009).

"[A]n overriding principle governing judicial review of variance decisions by a board of adjustment is that, assuming an adequate basis in the record for a board's conclusions, deference to the judgment of local zoning boards ordinarily is appropriate." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58 (1999). We will reverse a board's decision only if its action was so arbitrary, capricious, or unreasonable, as to amount to an abuse of discretion. Zilinsky v. Zoning Bd. of Adjustment of Verona, 105 N.J. 363, 367 (1987). The burden is on the party challenging the board's decision to demonstrate the decision was arbitrary, capricious, or unreasonable. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002). If the record contains sufficient evidence to support the municipal board's determination, we will defer to the Board's decision. Kramer v. Bd. of Adjustment of Sea Girt, 45 N.J. 268, 296 (1965). Further, a board's factual determinations are presumptively valid. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 558 (2018).

A-0473-23

We review a judge's decision on an action in lieu of prerogative writs de novo based on the record before the municipal board. See N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004). Plaintiff incorrectly contends the judge should have allowed broad discovery and accorded him all favorable inferences in deciding the dismissal motions. However, in a prerogative writs action, our review of the Board's decision is limited to whether there was substantial evidence in the record justifying the Board's approval of the four-family home on the front lot.

Having reviewed the record before the Board, there was sufficient evidence supporting the approval of the requested four-family dwelling on the front lot. The Board heard testimony from the Cristanchos, the Board's engineer, the municipality's zoning officer, the Cristanchos' expert planner, and the Cristanchos' architect. Additionally, a subcommittee of Board members visited the front and rear lots prior to approving the application. The Board also issued a memorializing resolution stating the reasons for allowing the four-family home. Plaintiff failed to present any contrary evidence suggesting the Board's approval of the four-family home was arbitrary, capricious, or unreasonable.

We next consider plaintiff's arguments that the Boards' approval of a four-family dwelling resulted in an intensification of the use of the easement and

13

required his consent. He further asserts the Cristanchos lacked standing to file their application because they did not own the easement.

Under the MLUL, a developer may submit an application to a municipal board for development approval. N.J.S.A. 40:55D-3. A "developer" is "the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development, including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land." N.J.S.A. 40:55D-4.

Here, the Cristanchos had an enforceable interest in the existing easement, consistent with the express language of the written "ingress/egress easement." Thus, the Cristanchos had the right to submit an application to the Board for approval of a four-family house on the front lot.

Contrary to plaintiff's argument, the four-family home did not intensify the use of the easement requiring plaintiff's consent to the application. There were seven designated parking spaces when the property was a three-family home and there remained seven designated parking spaces upon approval of the four-family home. No additional parking spaces were created as a result of the four-family dwelling. Nor did the application for a four-family home expand

the footprint or square footage of the existing structure on the front lot. Nothing about the approval of the four-family home altered the existing easement.

Further, plaintiff failed to proffer evidence supporting any intensification of the use of the easement. In her fact findings, the judge stated the size, location, and use of the existing easement remained unchanged after the Board approved the four-family home. Because the use of the easement remained unchanged, plaintiff's consent was not required. Further, nothing in the easement's language required consent from the owner of the rear lot for any approvals related to the front lot.

We next consider plaintiff's argument that the Board lacked jurisdiction to consider the Cristanchos' application because he did not receive notice. The MLUL requires notice pertaining to the "property which is the subject of [the Board] hearing." N.J.S.A. 40:55D-12(b).

Specifically, plaintiff raises the following arguments: (1) the notice failed to comply with N.J.S.A. 40:55D-11 because it did not include the rear lot; and (2) notice purportedly sent to plaintiff violated N.J.S.A. 40:55D-12 because it was incorrectly addressed to "David" Avenue rather than "Davis" Avenue.

The MLUL sets forth the notice requirements for a hearing on a development application. N.J.S.A. 40:55D-11. The statute requires the notice

15

"state the date, time and place of the hearing, the nature of the matters to be considered and . . . an identification of the property proposed for development by street address."  Ibid.

The MLUL also sets forth the requirements for publication and delivery of the notice.  N.J.S.A. 40:55D-12.  An applicant may provide public notice by publication in "a newspaper of general circulation in the municipality."  Ibid. Individual notice of an application may be provided

> to the owners of all real property as shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property which is the subject of such hearing. . . . Notice shall be given by: (1) serving a copy thereof on the property owner as shown on the said current tax duplicate, or his agent in charge of the property, or (2) mailing a copy thereof by certified mail to the property owner at his address as shown on the said current tax duplicate.
>
> [Ibid.]

Here, plaintiff argues notice of the Cristanchos' application was defective because the notice "failed to include any mention of [the rear lot] in . . . [the] notice published and mailed to property owners."  According to plaintiff, the notice needed to include the rear lot as the rear lot had use of the easement. However, the Board's approval of the four-family home on the front lot did not

A-0473-23

alter the easement or its use. Because the Cristancho's application did not involve any changes to the easement, the notice as worded was sufficient.

Plaintiff also argues notice was defective because it was "incorrectly addressed to 513 David Avenue, rather than 513 Davis Avenue." Based on the deficient notice, plaintiff contends the Board lacked jurisdiction to hear the Cristanchos' application.

We are unaware of any case law deeming errors in notices sent under N.J.S.A. 40:55D-11 to be fatal per se and divest a municipal board of jurisdiction to consider a development application. To the contrary, our Supreme Court has held "a minor, clerical deviation that had no potential to mislead any interested member of the public [did] not fall short of the statutory requirement for describing the property to be developed." Northgate Condo. Ass'n v. Borough of Hillsdale Plan. Bd., 214 N.J. 120, 142 (2013). In Pond Run Watershed Association v. Township of Hamilton Zoning Board of Adjustment, 397 N.J. Super. 335, 349 (App. Div. 2008), we sustained a "trial court's finding that [a] typographical error . . . did not vitiate the legal sufficiency of the notice."

Here, it is undisputed the Cristanchos' attorney obtained a certified list of property owners within two hundred feet of the front lot from the municipality and mailed notice of the application to those property owners by certified mail

17

consistent with the MLUL. It is also undisputed that plaintiff's address on the certified list was correct, but the Cristanchos' attorney inadvertently misaddressed plaintiff's notice to "David" Avenue rather than "Davis" Avenue.

The judge found nothing in the record indicated the Town of Kearney had both a David Avenue and a Davis Avenue that might have resulted in the misdelivery of the notice to be to someone other than plaintiff. She also noted plaintiff never submitted a certification claiming neither he nor his uncle received the certified mail notice.

Additionally, plaintiff never identified any other streets in the Town of Kearney that could have resulted in the post office misdelivering the notice sent to plaintiff. The Cristanchos' attorney certified he sent the notice to plaintiff by certified mail and it was not returned to the law firm as undeliverable. Moreover, plaintiff could have submitted certification denying receipt of notice but failed to do so. Additionally, due to the passage of time, the Cristanchos were unable to confirm that the certified letter directed to plaintiff was delivered because the post office did not maintain such records after two years. Because there is no "David" Street in Kearny and because the certified mail notice directed to plaintiff did not come back marked as "undeliverable," the judge found plaintiff received the notice despite the minor typographical error.

A-0473-23

We are satisfied the record contains sufficient credible evidence that notice was effectively served on plaintiff despite the minor typographical error. The judge thoroughly considered the issue of notice and found the MLUL's notice requirements were satisfied. Additionally, plaintiff does not challenge publication of the notice in the local newspaper. Thus, on these facts, the Board had jurisdiction to consider the requested four-family dwelling on the front lot.

We also agree that plaintiff's complaint in lieu of prerogative writs was time barred. An objector may challenge a Board decision upon the filing of an action in lieu of prerogative writs within forty-five days of the first publication of the notice of decision. N.J.S.A. 40:55D-17h.

Here, plaintiff filed his complaint in lieu of prerogative writs on June 13, 2023, approximately one year and eight months after the Board published the resolution approving the four-family dwelling in the local newspaper. As the owner of the rear lot, plaintiff had ample opportunity to observe any work related to the home on the front lot and should have timely filed his action in lieu of prerogative writs. Based on the judge finding the notice requirements of N.J.S.A. 40:55D-12 were met, plaintiff had forty-five days from publication of the Board's memorializing resolution to file his action in lieu of prerogative

writs and failed to do so.  As a result, the judge properly dismissed plaintiff's complaint as time barred.

To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0473-23